[No. 1469-1.    Division One.    September 4, 1973.]

CHRISTINE U. LAMEREAUX, *Respondent,* v. SYLVINA M. PAGUE, *Appellant.*

*Lewis S. Armstrong,* for appellant.

*Short, Cressman & Cable* and *John C. Hoover,* for respondent.

HOROWITZ, J.—The controlling question here involves the meaning of the words "act as a real estate broker," as used in RCW 18.85.100.

Plaintiff, Christine U. Lamereaux, in 1967 owned and conducted a sole proprietorship business under the name of Capital Investment Company, located in Midway, Washington. At the same time and place, she also managed the Mutual Mortgage & Escrow Co., Inc., of which she was president and majority stockholder. Plaintiff was not and is not a licensed real estate broker under Washington law. While conducting these businesses, plaintiff learned of the availability for purchase for the sum of $140,000 of a tract of land near Renton, Washington. She became interested in acquiring the property for herself. She negotiated with the

landowner to reduce the price to $90,000, and the owner orally agreed to sell her the property for that sum.

Plaintiff planned to submit an earnest money agreement to cover the proposed purchase transaction. Before she could do so, defendant inadvertently overheard plaintiff mentioning the matter of the contemplated purchase to a third party. Defendant, for whom Mutual Mortgage & Escrow Co., Inc. was financing real estate, then told plaintiff she would be interested in acquiring the property at the $90,000 price. Plaintiff then said:

> Fine, Mrs. Pague, but I would want $10,000 for the fact that I would pull out and give you the chance to buy.

Defendant orally agreed to pay plaintiff the $10,000 requested and plaintiff then withdrew from any further effort on her part to acquire the property for herself.

Plaintiff prepared an earnest money receipt for defendant's use. Defendant, however, did not use that earnest money receipt. She then conducted all further negotiations for the acquisition of the property. She signed an earnest money receipt the owner had caused to be prepared for the $90,000 purchase price. The earnest money receipt she signed expressly provided as follows:

> 5. On closing, purchaser shall pay to Capital Investment the sum of $10,000 in consideration of its services incident to this acquisition unless by mutual agreement Capital Investment receives an equity interest satisfactory to the purchaser and Capital Investment incident to closing; however, the failure of purchaser to perform her obligation under this paragraph shall not affect the rights of the purchaser and seller hereunder. This payment of $10,000 shall be in addition to the purchase price of $90,000.

Later plaintiff was paid $1,300 of the $10,000 promised. Defendant refused to pay any more apparently on the ground that plaintiff was not a licensed real estate broker.

Plaintiff then sued defendant for the unpaid balance of $8,700, plus interest. Her complaint could not and did not allege that she was a licensed real estate broker. Defendant, in her answer, affirmatively alleged plaintiff was not a li-

censed real estate broker and that defendant was entitled to recover back the $1,300 paid to plaintiff. The trial court overruled the claimed defense and counterclaim and entered judgment for plaintiff in the sum sued for. Defendant appeals.

Defendant makes seven assignments of error, including assignments to five findings of fact. Plaintiff contends defendant's appeal is brought up on a short record under CAROA 34(4) and is limited to a single claim of error, namely, "that appellant ought to have been licensed as a real estate broker because of the provisions of RCW 18.85.100 . . ." The record on appeal contains no "concise statement of the points on which [the appellant] intends to rely on the appeal." Nevertheless, we are satisfied substantial evidence supports the findings assigned as error and that the disposition of all such assignments is controlled by the question posed by defendant.

The court found that consideration for defendant's promise to pay the $10,000 was plaintiff's promise not to submit "an earnest money on her own behalf for purchase of the property . . ." (finding of fact No. 4); and that "plaintiff gave up valuable consideration because she gave up her right to submit an offer to purchase said property" (finding of fact No. 6). The court expressly found that "plaintiff did not use the transaction as a subterfuge to avoid the provisions of the Real Estate Brokers and Salesmen Act." Finding of fact No. 8.

The evidence supporting these findings shows all plaintiff's activities in seeking out the land involved, negotiating with its owner and persuading him to reduce the asking price by $50,000, was done on her own behalf as a prospective purchaser in her own right. This was done before she was aware of defendant's interest in acquiring the property. There is no evidence that in seeking to make the purchase she did so with a view to obtaining a commission or other compensation on resale. After plaintiff's agreement with defendant, plaintiff withdrew from any further effort to purchase the property. Defendant conducted all further

negotiations for purchase with the landowner. Plaintiff, it is true, as a matter of accommodation to defendant, prepared a proposed earnest money receipt for defendant's use. Defendant did not use it.

■ All evidence is consistent with the inference and presumption that the landowner would have honored his oral agreement to sell the property for $90,000 to the plaintiff had she pursued the matter. This is confirmed by the fact that, after plaintiff withdrew, he sold the identical property to defendant for the same $90,000 price. It is true the landowner might have asserted the statute of frauds as a defense to the performance of his oral promise to sell the property to plaintiff. However, such a defense was personal to him and could not be availed of by a third person such as defendant in order to claim that plaintiff had nothing to sell. *F.D. Hill & Co. v. Wallerich*, 67 Wn.2d 409, 407 P.2d 956 (1965); *Backus v. Feeks*, 71 Wash. 508, 129 P. 86 (1913); 49 Am. Jur. *Statute of Frauds* § 589 (1943). *See also Browning v. Johnson*, 70 Wn.2d 145, 422 P.2d 314 (1967); 1 A. Corbin, *Contracts* §§ 123, 127 (1963); Restatement of Contracts §§ 75 (1) (b) and (c), 76, 81 (1932); 1 S. Williston, *Contracts* §§ 115, 135, 135A (3d ed. 1957).

■ So long as the landowner was not raising any objection to the validity of the oral promise to sell his land to plaintiff at the price of $90,000, plaintiff was an obstacle to the landowner selling the property to defendant. By withdrawing from the proposed sale and purchase, plaintiff eliminated her competitive interest and made it possible for defendant to acquire the property at a price she considered advantageous to her.

We need not determine whether, if the transaction here violates RCW 18.85.100, plaintiff may nevertheless be covered as a third party creditor-beneficiary under paragraph 5 of the earnest money receipt. *See Steen v. Neva*, 37 N.D. 40, 163 N.W. 272 (1917); 4 A. Corbin, *Contracts* § 821 (1951); Restatement of Contracts §§ 136, 144 (1932). We have upheld finding of fact No. 8, which states the transaction was not used "as a subterfuge to avoid the provisions

644

of the Real Estate Brokers and Salesmen Act." Accordingly, we conclude that plaintiff, in negotiating with the landowner for the purchase of the property on her own behalf, and then, for valuable consideration, agreeing to remove herself from the purchase, did not "act as a real estate broker" within the meaning of RCW 18.85.100. Plaintiff is entitled to her judgment and defendant's counterclaim is properly dismissed. *See Main v. Taggares,* 8 Wn. App. 6, 504 P.2d 309 (1972).

Affirmed.

SWANSON, C.J., and JAMES, J., concur.